UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:17-cr-116-J-34PDB
    18 U.S.C. § 371

JACQUAN SIBLEY

## INFORMATION

The United States Attorney charges:

### COUNT ONE
### (Conspiracy)

**A. Introduction**

At times material to this Information:

**The Defendant and Co-Conspirators**

1. JACQUAN SIBLEY (Sibley) was a resident of Jacksonville, Florida, and was previously employed by Federal Express (FedEx) and the United Parcel Service (UPS). Through these positions, SIBLEY was generally familiar with the shipping and transmittal of packages through the mail.

2. Co-Conspirator #1 was a resident of Jacksonville, Florida and was employed by a Jacksonville company that did business with UPS. In this role, Co-Conspirator #1 was familiar with the printing of UPS labels and understood how such labels could be printed. In this role, Co-Conspirator #1 printed

labels – for both legitimate business and for his co-conspirators' scheme.

3. Co-Conspirator #2 was a resident of Jacksonville, Florida who has previously been convicted of crimes related to repackaging deliveries of mail items. In particular, Co-Conspirator #2 was familiar with how to place new shipping labels over existing labels so that UPS and others would unwittingly deliver packages to various co-conspirators. Once these packages were delivered to co-conspirators, these co-conspirators would then steal the contents of these packages.

4. Co-Conspirator #3 was a resident of Jacksonville, Florida and previously worked at UPS. In this role, he was responsible for inspecting and labeling packages.

5. Co-Conspirator #4 was a resident of Jacksonville, Florida and routinely recruited employees at UPS to participate in the conspiracy.

## Background

6. UPS transmitted packages through the mail. UPS had a distribution facility in Jacksonville, Florida and shipped mail through this distribution facility.

7. In general, UPS was able to deliver packages to customers by relying on "shipping labels" which included pertinent information about the package. Among other things, these labels included an address for the package

to be shipped.

8. Certain packages shipped by UPS contained sensitive items that required special handling. In particular, when a package contained lithium ion batteries, these packages generally had a stamp identifying the presence of these batteries. These packages mandated certain handling requirements because of the flammability of lithium ion batteries.

### B. The Conspiracy

From approximately in or about October 2012 and continuing thereafter through in or about March 2014, in the Middle District of Florida, and elsewhere, the defendant,

JACQUAN SIBLEY,

did knowingly and willfully combine, conspire, confederate and agree with other conspirators to commit an offense against the United States, that is, to knowingly, willfully, and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, in violation of 18 U.S.C. § 1341.

### C. Manner and Means of the Conspiracy

The manner and means by which SIBLEY and co-conspirators sought to accomplish the purpose and objectives of the conspiracy included, but were not limited to, the following:

1. It was a part of the conspiracy that the conspirators would and did identify and target packages bearing a lithium ion battery symbol, as the conspirators knew that these packages likely had high-value electronic items.

2. It was further a part of the conspiracy that the conspirators would and did print shipping labels of various "drop sites" throughout the city. These "drop sites" were residences and businesses where packages could be misdirected and shipped.

3. It was further a part of the conspiracy that the conspirators would and did recruit various individuals to provide their homes and businesses for use as "drop sites." These individuals were paid modest amounts of money to allow packages to be shipped to their homes, oftentimes not knowing the contents or purposes of these shipments.

4. It was further a part of the conspiracy that the conspirators would and did recruit UPS employees to place these new shipping labels on packages, on top of and concealing the existing shipping labels.

5. It was further a part of the conspiracy that the conspirators would

and did pick up the packages when they were delivered to drop sites and then sell the proceeds of these packages. The conspirators knew that these packages were intended for other recipients but the conspirators nonetheless took possession of the packages for their own use.

### D. Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the conspirators performed, and caused to be performed, overt acts in the Middle District of Florida, and elsewhere, including, but not limited to, the following:

1. In or about early 2013, Co-Conspirator #2 recruited SIBLEY to participate in the repackaging scheme. Co-Conspirator #2 explained the scheme to SIBLEY and SIBLEY agreed to participate.

2. In or about early 2013, SIBLEY recruited Co-Conspirator #3 to participate in the relabeling scheme. SIBLEY knew that Co-Conspirator #3 worked at UPS and had access to packages leaving the UPS warehouse. SIBLEY offered Co-Conspirator #3 money in exchange for placing "relabeled" shipping labels over the existing labels on packages that had a lithium ion battery symbol.

3. In or about early 2013, SIBLEY received repackaged labels from Co-Conspirator #1 and these labels used the shipping address of Co-Conspirator #3's mother. By using the shipping address of Co-Conspirator

#3's mother, SIBLEY and his co-conspirators knew that packages, which were not intended for SIBLEY or his conspirators, would be shipped to a known residence.

4. In or about early 2013, SIBLEY paid money to Co-Conspirator #3's mother in exchange for being able to use her residence for the delivery of packages.

5. As a result of these actions, in or about early 2013, SIBLEY and his conspirators received a shipment of 19 Galaxy S5 Telephones that were delivered to Co-Conspirator #3's mother's house. SIBLELY began using one of those telephones as his primary telephone, even though he knew that the package was not originally intended for him.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 18 U.S.C. § 1341, in violation of 18 U.S.C. § 371, the defendant, JACQUAN SIBLEY, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and

28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, a $448,932.27 forfeiture money judgment, which represents the proceeds of the offense charged in Count One.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

                        W. STEPHEN MULDROW
                        Acting United States Attorney

By: _____
     JASON P. MEHTA
     Assistant United States Attorney

By: _____
     FRANK TALBOT
     Assistant United States Attorney
     Acting Chief, Jacksonville Division